# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) ) ) |
| Applicant, | ) ) ) |
| v. | ) Case No. 16-CV-622-GKF-PJC ) |
| INTERNATIONAL UNION OF OPERATING ENGINEERINGS, LOCAL 627, | ) ) ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the court is the Application of the National Labor Relations Board ("NLRB") for Order Enforcing Subpoena *Duces Tecum* [Doc. No. 1]. For the reasons set forth below, the NLRB's application is granted.

### I. Procedural Background

This dispute arises from alleged violations of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, by respondent International Union of Operating Engineers, Local 627 (the "IUOE"). The NLRB is an administrative agency of the United States Government charged with investigating and remedying unfair and discriminatory labor practices. The IUOE is a labor organization based that operates hiring halls in Tulsa and Oklahoma City, and whose members are signatories to collective-bargaining agreements. Generally speaking, the IUOE uses hiring halls and out-of-work referral lists to secure employment for union members.

On April 12, 2013, the NLRB issued a decision (the "2013 Order") finding the IUOE violated the NLRA by: (1) denying Stacy M. Loerwald's requests to examine the out-of-work

referral list; (2) removing her from the list; (3) denying Loerwald's request to re-register for the list; and (4) refusing to stamp her Oklahoma Employment Security Commission work search book. On review, the Tenth Circuit Court of Appeals held the case in abeyance pending the Supreme Court's decision in *Canning v. N.L.R.B.*, 124 S.Ct. 2250 (2014). In light of *Canning*, the Tenth Circuit remanded the case to the NLRB for reconsideration.

On November 5, 2014, a properly-constituted NLRB panel incorporated and adopted the 2013 Order (the "2014 Order"). To remedy the NLRA violations described above, the NLRB ordered the IUOE to: (1) grant Loerwald access to the out-of-work referral list; (2) restore her to the proper position of priority on the list; (3) make Loerwald whole for losses of earnings or benefits; (4) remove any reference to Loerwald's absence from the list from its files; (5) notify Loerwald of its remedial action; (6) inform her that prior absences from the list would not adversely affect future employment placement; (7) provide the NLRB all hiring hall records, payroll records, social security payment records, timecards, personnel records and reports, and all other relevant documents to analyze the amount of backpay owed; (8) post required notice to IUOE members; and (9) execute and return a Certification of Compliance. [Doc. 1-2, pp. 16–17]. The Tenth Circuit enforced the NLRB's 2014 Order on November 20, 2014 (the "*Loerwald* Judgment"). [*Id.* at 20–25].

On December 14, 2015, the NLRB requested the IUOE provide documents demonstrating compliance with the *Loerwald* Judgment. The IUOE responded, providing the NLRB postings and notices; a check to Loerwald in the amount of $16,879.58; excerpts of relevant collective-bargaining agreements; dispatch history for IUOE offices for parts of 2011 and 2012; and work, dispatch, member qualification, and health and welfare history for Loerwald and certain other employees. While the compliance package did not include a copy of the

2

required expunction letter, the IUOE certified that it removed any record of Loerwald's absence from its out-of-work list and notified Loerwald of such.

In January 2016, the NLRB contacted the IUOE and requested information concerning its calculation of Loerwald's backpay and posting of notice. The IUOE claimed it posted the required notice in 2013, but declined to provide a written account of its backpay calculations. To that end, the NLRB notified the IUOE of its noncompliance with the *Loerwald* Judgment . Consequently, the NLRB's Regional Office recommended institution of contempt proceedings with its Contempt, Compliance, and Special Litigation Branch ("CCSLB"). The CCSLB informed the IUOE of potential contempt proceedings, but received no reply.

On May 17, 2016, CCSLB issued Subpoena *Duces Tecum* B-1-RIXX41 ("the subpoena") directing the IUOE to respond to interrogatories and produce documents concerning its compliance with the *Loerwald* Judgment. [Doc. No. 1-2, pp. 53–60]. The IUOE petitioned the NLRB to revoke the subpoena on May 23, 2016, which the CCSLB opposed on June 10, 2016. On August 10, 2016, the NLRB denied the IUOE's petition to revoke and directed compliance with the subpoena. The IUOE was instructed in writing to describe materials already provided and state whether such documents constituted all requested documents. The CCSLB immediately thereafter contacted the IUOE to discuss compliance with the subpoena. The IUOE did not respond. Accordingly, the NLRB has now moved to enforce the subpoena in this court.

## II. Legal Standard

Section 11(1) of the NLRA authorizes the NLRB to issue subpoenas in connection with ongoing investigations or proceedings. 29 U.S.C. § 161(1); *see N.L.R.B. ex rel. Int'l Union of Elec., Radio, & Machine Workers, AFL-CIO-CLC v. Dutch Boy, Inc.*, Nos. CIV-78-0238-T, -0239-T, 1978 WL 1624, at *2–3 (W.D. Okla. Apr. 24, 1978). That grant derives from the

NLRB's "broad investigatory authority," which is more akin to a grand jury's function than the judiciary's. *N.L.R.B. v. Midwest Heating & Air Conditioning, Inc.*, 528 F.Supp.2d 1172, 1176 (D. Kan. 2007). To that end, Section 11(2) requires district courts to enforce subpoenas that: (1) are jurisdictionally proper; (2) are procedurally sound; and (3) request relevant and material evidence. 29 U.S.C. § 161(2); *Dutch Boy*, 1978 WL 1624, at *2; *N.L.R.B. v. Vista Del Sol Health Servs.*, 40 F.Supp.3d 1238, 1256 (C.D. Cal. 2014). Accordingly, a district court's scope of review is "narrow." *Midwest Heating*, 528 F.Supp.2d at 1176; *Vista Del Sol Health Servs.*, 40 F.Supp.3d at 1255–56.

### III. Analysis

Section 11(2) supports enforcement of the subpoena in this case. *First*, the court has jurisdiction. Section 11(2) authorizes enforcement of an NLRB subpoena by any district court sitting in the same jurisdiction as: (1) the inquiry at issue; or (2) where the allegedly noncompliant party resides or transacts business. 29 U.S.C. § 161(2). Here, Local 627 of the IUOE resides in, transacts business in, and was allegedly noncompliant in Tulsa, Oklahoma, [Doc. No. 1, p. 1, ¶ 2]; the fact additional IUOE offices also exist in Oklahoma City is irrelevant. Thus, this court qualifies as a proper enforcement authority under Section 11(2). *See* 29 U.S.C. § 161(2).

Moreover, the subpoena was issued under the NLRB's investigatory authority—specifically, pursuant to an investigation of the IUOE's compliance with and contempt of the *Loerwald* Judgment. *See N.L.R.B. v. Baywatch Sec. & Investigations*, No. Civ. A H-04-220, 2005 WL 1155109, at *2 (S.D. Tex. Apr. 28, 2005) ("The Subpoena was issued pursuant to the Board's subpoena power for a lawful purpose—to investigate and ensure Respondent's compliance with the Fifth Circuit's January 22, 2003, Order."). That is a proper purpose—the

NLRB may use Section 11(1) investigatory powers "to determine whether a respondent . . . may be violating [an] order" enforced by a court of appeals. *See N.L.R.B. v. Interstate Material Corp.*, 930 F.2d 4, 5 (7th Cir. 1991); *see also N.L.R.B. v. Steinerfilm, Inc.*, 702 F.2d 14, 15 (1st Cir. 1983) (Breyer, J.) (confirming NLRB's authority to "independently investigat[e] possible contempt" especially where "the contempt in and of itself would constitute a separate unfair labor practice"); *cf. Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 269 (1940) (explaining that NLRB's powers "necessarily embrace[ ] exclusive authority to institute proceedings for violation of the court's decree directing enforcement").

*Second*, the subpoena was procedurally proper. The IUOE argues the NLRB failed to comply with 29 U.S.C. § 161(4) and Fed. R. Civ. P. 45. Neither contention has merit. Section 11(4) of the NLRA prescribes the methods for serving a Section 11(1) subpoena, including "by leaving a copy thereof at [a person's] principal office or place of business." 29 U.S.C. § 161(4); *see also* 29 C.F.R. § 102.113(c). Here, the NLRB utilized a courier service (UPS) to serve the IUOE at its principal place of business. [Doc. No. 1-2, p. 62–63]. That passes muster under NLRB rules and regulations. *See In re Offshore Mariners Un.*, 338 NLRB 745, 745 (2002) (permitting Federal Express to serve subpoena). And the IUOE's caselaw is not to the contrary—each case addresses service under the Federal Rules of Civil Procedure, not Section 11(1). *See CF&I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983) (interpreting Rule 45(c)'s witness fee and mileage provision); *Salley v. Bd. of Governors, Univ. of N.C.*, 136 F.R.D. 417, 418–19 (M.D.N.C. 1991) (interpreting Rule 5(b)'s service requirement); *Audio Enterprises, Inc. v. B&W Loudpseakers of Am.*, 957 F.2d 406, 409 (7th Cir. 1992) (interpreting Rule 4(c)'s service provision). For this reason, the IUOE's reliance on Rule 45(c) also fails. While Rule 45 requires that compliance with a subpoena occur within 100 miles

of a person's residence or place of business, Fed. R. Civ. P. 45(c), Section 11(1) expressly permits the production of evidence from "any place in the United States or any Territory or possession thereof." 29 U.S.C. § 161(1).[1] Thus, the subpoena properly issued under the terms of the NLRA.

*Third*, the subpoenaed materials touch and concern the matter under investigation. *See Cudahy Packing Co. v. N.L.R.B.*, 117 F.2d 682, 694 (10th Cir. 1941). The IUOE does not claim the requested evidence is irrelevant to the NLRB's investigation. Rather, it argues the subpoena is insufficiently specific. [Doc. No. 7, p. 5, ¶ 10]. The court does not agree. The subpoena requests: (1) documents substantiating the IUOE's compliance with the *Loerwald* Judgment; (2) records necessary to compute backpay; and (3) a narrative description of the IUOE's compliance efforts.[2] [Doc. No. 1-2, pp. 59–60]. Each is plainly relevant to the pending NLRB investigation and contemplated contempt or compliance proceedings. *See Interstate Material Corp.*, 930 F.2d at 5; *Steinerfilm, Inc.*, 702 F.2d at 15; *Baywatch Sec. & Investigations*, 2005 WL 1155109, at *2; *N.L.R.B. v. Baker*, No. 97-124-M, 1998 WL 1050895, at *4 (E.D. Va. Jan. 22, 1998) ("The NLRB . . . is entitled to seek information about the respondents' present financial ability to meet any remedial obligations.").

---

[1] The IUOE also objects to the lack of a certified record. [Doc. No. 7, pp. 1–2, ¶1]. The NLRA, however, imposes no such requirement. *Compare* 29 U.S.C. § 160(f) (directing filing of certified record with court of appeals on review of order fixing unfair labor practice liability or compliance obligations) *with* 28 U.S.C. § 2112(d) (exempting "proceedings to review or enforce those orders of administrative agencies" or "boards" from certified record requirements).

[2] The IUOE objects that Section 11(1) subpoena authority does not encompass interrogatories. [Doc. No. 7, p.6, ¶ 12]. That argument lacks a textual basis in the NLRA, *see* 29 U.S.C. §161(1), and has rejected by federal courts, *see, e.g.*, *N.L.R.B. v. Alaska Pulp Corp.*, 1995 WL 389722, at *5 (D.D.C. May 25, 1995) ("Through the use of a subpoena, the Board may require the production of evidence . . . . Such production does not exclude the use of interrogatories to obtain evidence.") (citation omitted).

The IUOE also argues the subpoena seeks documents and information already in the NLRB's possession. [Doc. No. 7, pp. 6–8, ¶ 13]. To start, the NLRB disputes that assertion, claiming the IUOE has failed to produce "*all* hiring hall records" from September 2010 to September 2013, information concerning backpay calculations, and evidence of compliance the *Loerwald* Judgment's notice requirements. [Doc. No. 9, pp. 4–5]; *Dutch Boy, Inc.*, 1978 WL 1624, at *4. And "[e]ven if [the IUOE] does not possess any additional documents beyond what . . . has already been produced, the NLRB cannot know th[at] in the absence of a specific representation by [the IUOE]." *See N.L.R.B. v. Jo-Dan Madalisse Ltd., LLC*, No. 15-mc-00228, 2015 WL 9302922, at *3 (E.D. Pa. Dec. 21, 2015). Nothing in the record establishes that "the production of the requested records and documents would place such an unreasonable burden [on the IUOE] so as to be oppressive." *See Dutch Boy, Inc.*, 1978 WL 1624, at *4. Accordingly, enforcement of the subpoena is proper.[3]

*Fourth*, the NLRB seeks an award of fees and costs incurred in litigating this enforcement action. [Doc. No. 1, p. 7]. The court declines that request. "Neither [Section] 11(1) nor [Section] 11(2) . . . provides for payment of costs or fees incurred in enforcing a subpoena in a district court." *See Baywatch Sec. & Investigations*, 2005 WL 1155109, at *3. And though some courts have awarded such relief under Rule 37, *see id.* at *3; *N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F.Supp.2d 991, 999–1001 (N.D. Cal. 2004), the court finds doing so here would be inequitable as the court's analysis—and NLRB's litigating position—rely on the firewall between the Federal Rules of Civil Procedure and Section 11(1).

---

[3] To the extent the subpoena calls for materials protected by the attorney-client privilege or work product doctrine, the IUOE must submit a privilege log in accordance with paragraph 4 of the subpoena. [Doc. No. 1-2, p. 57–58, ¶ 4].

WHEREFORE, the Application of the National Labor Relations Board for Order Enforcing Subpoena *Duces Tecum* [Doc. No. 1] is hereby granted.  The NLRB's request for fees and costs is denied.

IT IS SO ORDERED this 8th day of November, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT